**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRUM & FORSTER INDEMNITY COMPANY and UNITED STATES FIRE INSURANCE COMPANY, | ) ) ) | No. 2:20-cv-01030-RJC |
| | ) | |
| Plaintiffs, | ) | Judge Robert J. Colville |
| | ) | |
| vs. | ) | |
| | ) | |
| SIDELINES TREE SERVICE, LLC and HUNTINGTON INSURANCE, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Partial Motion to Dismiss (ECF No. 38) filed by Defendant Huntington Insurance, Inc. ("Huntington").  Huntington seeks dismissal of the equitable subrogation (Count III) and fraud claims (Count IV) set forth against Huntington in the operative Second Amended Complaint for Declaratory Judgment (ECF No. 25) ("Complaint") filed by Plaintiffs Crum & Forster Indemnity Company ("CFIC") and United States Fire Insurance Company ("U.S. Fire") (collectively, "Plaintiffs").  This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a).  Huntington's Motion has been fully briefed, and is ripe for disposition.

## I.      Factual Background & Procedural History

Plaintiffs assert that this case is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 in which Plaintiffs seek a determination

as to CFIC and U.S. Fire's obligations, if any, in connection with various insurance policies issued to Sidelines.  Compl. ¶ 1, ECF No. 25.  Plaintiffs also seek damages against Huntington, Sidelines' insurance broker, in connection with the purportedly improper and fraudulent reinstatement of various insurance policies issued to Sidelines.  *Id.* at ¶ 2.  In the Complaint, Plaintiffs set forth the following claims: (1) "Declaratory Judgment – Fraud/Rescission" (Count I) against Sidelines; (2) Breach of Contract (Count II) against Huntington; (3) Equitable Subrogation (Count III) against Huntington; and (4) Fraud (Count IV) against Huntington.  By way of this action, Plaintiffs seek, inter alia, the following relevant relief: (1) "a declaration that the CFIC Policies and the U.S. Fire Policy are rescinded ab initio as of May 22, 2020"; (2) judgment against Huntington and Sidelines "in the amount of all costs and fees Plaintiffs have incurred in investigating the claim under the CFIC Commercial Auto Policy"; and (3) "[i]n the alternative, in the event the CFIC Policies and the U.S. Fire Policy are not rescinded," a judgment "awarding to Plaintiffs and against Huntington all defense and indemnity costs to be incurred by Plaintiffs in connection with the June 3, 2020 accident involving Sidelines[.]"  Compl. 18, ECF No. 25.

In the Complaint, Plaintiffs set forth the following factual allegations relevant to the Court's consideration of the Motion at issue:

CFIC issued a commercial automobile insurance policy ("CFIC Auto Policy") to Sidelines with effective dates of June 24, 2019 to June 24, 2020 and liability limits of $1 million per accident or loss for covered autos liability.  Compl. ¶ 3, ECF No. 25.  CFIC also issued a general liability insurance policy ("CFIC General Liability Policy") to Sidelines with effective dates of June 24, 2019 to June 24, 2020 and the following liability limits: "$1 million per occurrence; $1 million personal & advertising injury; $1 million products & completed operations aggregate; and $2

million general aggregate." *Id.* at ¶ 4.[1]  U.S. Fire issued an umbrella policy ("U.S. Fire Policy") to Sidelines with effective dates of June 24, 2019 to June 24, 2020 and the following liability limits: "$4 million per occurrence; $4 million personal & advertising injury aggregate; $4 million products & completed operations aggregate; and $4 million general aggregate." *Id.* at ¶ 5.

Sidelines obtained the CFIC Policies and the U.S. Fire Policy through its insurance broker, Huntington.  Compl. ¶ 17, ECF No. 25.  Sidelines also entered into a Commercial Premium Finance Agreement ("FIF Agreement") with First Insuring Funding ("FIF"), under which FIF agreed to pay the premium of the CFIC Policies and the U.S. Fire Policy, and Sidelines agreed to pay FIF the premium amount plus finance charges in installments.  *Id.* at ¶ 18.  Pursuant to the FIF Agreement, FIF was granted power of attorney to cancel the financed policies, i.e. the CFIC Policies and the U.S. Fire Policy, in the event of Sidelines' default.  *Id.* at ¶¶ 19; 26.  FIF sent a "Notice of Intent to Cancel Insurance Coverage" to Sidelines on March 5, 2020 due to Sidelines' failure to make timely installment payments to FIF.  *Id.* at ¶ 21.  Following the March 5, 2020 Notice, Sidelines made payments to FIF to bring its account current.  *Id.* at ¶ 22.  Subsequently, Sidelines again became delinquent in making payments to FIF, and remained delinquent through May 22, 2020, when FIF forwarded a Notice of Cancellation to Plaintiffs stating that the CFIC Policies and the U.S. Fire Policy were cancelled in accordance with the terms of the FIF Agreement due to Sidelines' failure to make additional premium installment payments to FIF.  *Id.* at ¶¶ 23-24.  Plaintiffs processed cancellation of the CFIC Policies and the U.S. Fire Policy on June 3, 2020 in accordance with FIF's May 22, 2020 Notice of Cancellation, and cancelled the CFIC Policies and the U.S. Fire Policy effective May 22, 2020.  *Id.* at ¶ 30.

---

[1] The Court will refer to the "CFIC Auto Policy" and the "CFIC General Liability Policy" collectively as the "CFIC Policies."

On June 3, 2020, Zachary Foltz ("Foltz"), an employee of Sidelines, was driving an insured vehicle in Jefferson Hills, PA when he was in a serious automobile accident ("Accident") involving a vehicle driven by Officer Dale Provins ("Officer Provins").  Compl. ¶ 31, ECF No. 25.  An "ACORD Automobile Loss Notice" describes the Accident as follows: "[Insured Vehicle] changed lanes and hit [Other Vehicle] almost head on . . . ."  *Id.* at ¶ 32.  As a result of the Accident, Officer Provins suffered severe injuries that ultimately resulted in his death on June 13, 2020.  *Id.* at ¶ 33.  Foltz also suffered severe injuries as a result of the accident, and the vehicle he was driving also sustained damage.  *Id.* at ¶ 34.

Prior to processing cancellations of the CFIC Policies and the U.S. Fire Policy on June 3, 2020, Plaintiffs conferred with FIF regarding Sidelines' repayment status, and Plaintiffs were advised that Sidelines had paid a portion of the outstanding balance in connection with the CFIC Policies and the U.S. Fire Policy.  Compl. ¶¶ 35-36, ECF No. 25.  Plaintiffs communicated this information to Huntington, and advised Huntington that Plaintiffs would be processing the cancellation of the CFIC Policies and the U.S. Fire Policy as requested by FIF.  *Id.* at ¶ 37.  Sidelines paid all outstanding balances with respect to the CFIC Policies and the U.S. Fire Policy to FIF on June 3, 2020.  *Id.* at ¶ 39.  On June 8, 2020, Huntington contacted Plaintiffs to request reinstatement of the CFIC Policies and the U.S. Fire Policy.  *Id.* at ¶ 40.  Pursuant to its June 8, 2020 communication, Huntington forwarded a Notice of Request for Reinstatement, dated June 3, 2020 and prepared by FIF, to Plaintiffs.  *Id.* at ¶ 41.  Despite the fact that cancellation of the relevant policies was already in progress, Plaintiffs agreed to reinstate the CFIC Policies and the U.S. Fire Policy with an effective date of reinstatement of May 22, 2020 following receipt of the Notice of Request for Reinstatement dated June 3, 2020.  *Id.* at ¶ 42.

Huntington is licensed by the Commonwealth of Pennsylvania as an insurance producer. Compl. ¶ 73, ECF No. 25.  Plaintiffs entered into a Producer Agreement ("Producer Agreement"), effective June 29, 2011, with Huntington, pursuant to which Huntington was authorized to solicit, receive, and send proposals for commercial insurance contracts to Plaintiffs.  *Id.* at ¶¶ 46-47.  The Producer Agreement required Huntington to, inter alia: (1) comply with all applicable laws and regulations; (2) cooperate with and assist Plaintiffs in the exercise of their right to amend, cancel, decline to renew, or conditionally renew any policy; (3) notify Plaintiffs of claims, suits, or losses under Plaintiffs' policies and cooperate fully in Plaintiffs' investigation, adjustment, settlement, and payment of claims; and (4) notify and cooperate with Plaintiffs when Huntington receives notice of any other claim or alleged liability that involves or may potentially involve Plaintiffs.  *Id.* at ¶¶ 48-50.  Plaintiffs aver that Huntington was aware of the Accident at the time that it communicated with Plaintiffs on June 8, 2020 to request reinstatement of the CFIC Policies and the U.S. Fire Policy.  *Id.* at ¶ 43.  During the June 8, 2020 communication between Plaintiffs and Huntington, Huntington did not advise Plaintiffs of the Accident.  *Id.* at ¶ 44.  Plaintiffs first received notice of the Accident on June 9, 2020.  *Id.* at ¶ 45.

The claim related to the Accident was submitted under the CFIC Auto Policy.  Compl. ¶ 53.  The CFIC Auto Policy includes the following condition:

**2. Concealment, Misrepresentation Or Fraud**

> This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form.  It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:
>
> **a.** This Coverage Form;
>
> **b.** The covered "auto";
>
> **c.** Your interest in the covered "auto"; or

     **d.** A claim under this Coverage Form.

*Id.* at ¶ 54.  The CFIC Auto Policy also contains a "Pennsylvania Changes – Cancellation and Nonrenewal endorsement," which provides: "[t]his policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us[,]" and further provides: "[n]otice of cancellation will state the effective date of cancellation.  The policy period will end on that date."  *Id.* at ¶ 55.

     Plaintiffs initiated this action by filing their original Complaint (ECF No. 1) on July 10, 2020.  Plaintiffs filed an Amended Complaint (ECF No. 14) on September 15, 2020, and Sidelines filed an Answer (ECF No. 15) on October 6, 2020.  Mariah Provins, as Administratrix of the Estate of Dale Provins, Deceased, filed a Motion to Intervene (ECF No. 17) on October 13, 2020.  That Motion has been fully briefed, and is the subject of a Memorandum Opinion that will be entered contemporaneously with the present Memorandum Opinion.  Plaintiffs filed the operative Complaint on October 22, 2020.  Sidelines filed an Answer and Crossclaim (ECF No. 31) on November 4, 2020.[2]  Huntington filed the Partial Motion to Dismiss, along with a Brief in Support (ECF No. 40), on January 4, 2021.  Huntington also filed an Answer (ECF No. 42) to Sidelines' Crossclaim on January 4, 2021.  Plaintiffs filed a Response (ECF No. 43) and a Brief in Opposition (ECF No. 44) to the Partial Motion to Dismiss on January 25, 2021.  Huntington filed a Reply (ECF No. 45) on February 1, 2021.

## II.    Legal Standard

     A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In

---

[2] Sidelines asserts a crossclaim for professional negligence against Huntington.  Answer 19, ECF No. 31.

deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim."  *Iqbal*, 556 U.S. at 675.  Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see also Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)

> ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile.  *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

## III.    Discussion

In the Complaint, Plaintiffs assert that their June 8, 2020 reinstatement of the CFIC Policies and the U.S. Fire Policy was procured by fraud, specifically asserting that Sidelines and/or Huntington failed to notify Plaintiffs of the Accident.  Plaintiffs assert that, had Plaintiffs been made aware that a Sidelines employee was involved in a serious motor vehicle accident on June 3, 2020, Plaintiffs would not have reinstated the CFIC Policies and the U.S. Fire Policy, which

8

were purportedly properly cancelled effective May 22, 2020.  Compl. ¶ 61, ECF No. 25; *see also id.* at ¶¶ 88-90; 94-98.  Plaintiffs assert a claim for breach of contract (Count II) against Huntington arising out of the Producer Agreement between Plaintiffs and Huntington, and Huntington does not challenge that claim at this time.  Br. in Supp. 4 n.2, ECF No. 40.  As noted above, Plaintiffs' claims for equitable subrogation (Count III) and fraud (Count IV) against Huntington are at issue in this Memorandum Opinion.  Huntington asserts that Plaintiffs' equitable subrogation claim fails because Plaintiffs do not allege that they have made any payments for which equitable subrogation is available, and further asserts that the claim is barred by the gist of the action doctrine.  Br. in Supp. 4, ECF No. 40.  Huntington further argues that Plaintiffs' fraud claim is also barred by the gist of the action doctrine.  *Id.*  Plaintiffs assert that their equitable subrogation claim is proper as a matter of law, and that neither the equitable subrogation claim nor the fraud claim is barred by the gist of the action doctrine because they do not arise solely from the Producer Agreement between Plaintiffs and Huntington.  Br. in Opp'n 2, ECF No. 44.

### A.  Equitable Subrogation Claim (Count III)

By way of their equitable subrogation claim, Plaintiffs assert that Huntington had a fiduciary duty to Plaintiffs, and that Huntington breached that duty by not disclosing the Accident when seeking reinstatement of the policies on June 8, 2020.  Compl. ¶¶ 86-87, ECF No. 25.  Plaintiffs assert that, because of Huntington's breach of its fiduciary duty, the CFIC Policies and the U.S. Fire Policy were improperly reinstated, and that, as a result, Plaintiffs have been required to incur costs and fees in the investigation of a claim related to the Accident, in addition to costs and fees incurred in association with this litigation, and that Plaintiffs will suffer further damages in the form of defense costs and indemnification on behalf of Sidelines should this Court deny Plaintiffs' request for rescission of the CFIC Policies and the U.S. Fire Policy.  *Id.* at ¶¶ 91-92.

In order for equitable subrogation to apply, the following four requirements must be established:

(1) the claimant paid the creditor to protect his own interests;

(2) the claimant did not act as a volunteer;

(3) the claimant was not primarily liable for the debt; and

(4) allowing subrogation will not cause injustice to the rights of others.

*In re Est. of Devoe*, 74 A.3d 264, 268 (Pa. Super. 2013) (quoting *1313466 Ontario, Inc. v. Carr*, 954 A.2d 1, 4 (Pa. Super. 2008)).

Huntington asserts that Plaintiffs' equitable subrogation claim fails as a matter of law because Plaintiffs do not allege that they have made a payment to a creditor to satisfy a debt of Huntington.  Br. in Supp. 5, ECF No. 40.  Huntington argues that, even if it owes a debt to Sidelines, Plaintiffs have not alleged a payment to Sidelines on behalf of Huntington in satisfaction of that purported debt.  *Id*. at 6  Huntington further argues that any fees and expenses Plaintiffs have incurred in investigating the claim related to the Accident and in bringing this litigation "are not payments made to a third-party to satisfy a debt of Huntington[,]" and are "[i]nstead costs and expenses Plaintiffs have incurred internally for work and services Plaintiffs have received."  *Id.* Huntington argues that Plaintiffs' attempts to recover such fees and expenses "violates the principle that equitable subrogation is limited to what an insurer paid on an insured's behalf."  *Id*. Huntington further asserts that litigation costs in this matter are arguably also voluntary.  *Id.* at 6 n.3.

Plaintiffs argue that their claim for equitable subrogation is pled in the alternative, specifically in the event that Plaintiffs are not permitted to rescind the CFIC Policies and the U.S. Fire Policies and are obligated to provide coverage for the Accident, which occurred after

Sidelines' policies had been cancelled.  Br. in Opp'n 2, ECF No. 44.  Specifically, Plaintiffs explain:

> If Plaintiffs are permitted to rescind the CFIC Policies and the U.S. Fire Policy, there will be no payments required to be made by CFIC on behalf of Sidelines under the CFIC Commercial Auto Policy and thus, no need for Plaintiffs' equitable subrogation claim against Huntington.  On the other hand, if the CFIC Policies and the U.S. Fire Policy are not rescinded, Plaintiffs will be required to expend what will certainly amount to a large sum of money in defending and indemnifying Sidelines in connection with the June 3, 2020 accident and Officer Provins' death.

*Id.* at 3.  Plaintiffs assert that this type of "if-then," hypothetical pleading of claims is permissible under Federal Rule of Civil Procedure 8(d)(2), which provides: "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  *Id.* at 3; *see also* 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1282 (3d ed. 2021)  ("Alternative and hypothetical pleading can be distinguished one from the other in that the former usually is drafted in terms of 'either-or' propositions, whereas the latter is formulated as 'if-then' allegations.").  Plaintiffs argue that there is no assertion that its rescission claim, which Plaintiffs assert is the claim that should be considered to be pled in the alternative with the equitable subrogation claim, is not sufficiently pled, and that, under the plain terms of Rule 8, the equitable subrogation claim should not be dismissed on the basis that payments to a creditor are not alleged because Rule 8 explicitly authorizes Plaintiffs' claim as an alternative and hypothetical theory of recovery.  *Id.* at 4.

While the Court acknowledges that Rule 8 permits a party to plead hypothetically, the Court also finds that Plaintiffs' claim for equitable subrogation is not consistent with the type of "if-then" pleading set forth in the case law they cite.  Cases wherein hypothetical pleading is permitted, at least in the fashion that Plaintiffs attempt to plead, mainly involve the assertion of

one cognizable primary claim and another, alternative and hypothetical, claim that is asserted in the same lawsuit and *is contingent on, and will become cognizable upon*, the resolution of the primary claim in a certain manner. *See In re Sunrise Sec. Litig.*, 793 F. Supp. 1306, 1312 (E.D. Pa. 1992) ("Here, the Outside Directors and Deloitte have denied that the sham loans were made but pleaded hypothetically that if the loans were in fact made Blank, Rome concealed them from the Directors and Deloitte."); *Dimensional Music Publ'g, LLC v. Kersey ex rel. Est. of Kersey*, 448 F. Supp. 2d 643, 653 (E.D. Pa. 2006) (declining to dismiss, and instead staying, a hypothetical claim that was contingent upon the outcome of another claim in the same case)*; see also* 5 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1282 ("The ability to plead hypothetically is not so broad as to allow a plaintiff to sue for a hypothetical injury, however."); *Sprague Farms, Inc. v. Providian Corp.*, 929 F. Supp. 1125, 1131 (C.D. Ill. 1996) ("Although the Court primarily relies on the proper interpretation of Rules 8(e)(2) and 11(b)(3), another reason requires the Court to dismiss Counts III and IV: Sprague Farms' hypothetical claims of trespass and nuisance do not allege the existence of an actual controversy.  Counts III and IV merely assert that a controversy may exist if Sprague Farms subsequently discovers pollution on Parcel 3.").  While the two claims asserted in hypothetical pleadings are inconsistent, each presents an actual controversy that a court can resolve, even if the "if-then" claim is contingent on the outcome of the primary claim.  It is in this manner that Plaintiffs' claim is not a permissible "if-then" hypothetical pleading.

Plaintiffs' claim for equitable subrogation is simply premature, and such a claim will not arise until Plaintiffs pay a creditor in connection with the Accident*.  See Wimer v. Pennsylvania Emps. Benefit Tr. Fund*, 868 A.2d 8, 17 (Pa. Super. 2005), *aff'd*, 939 A.2d 843 (Pa. 2007) ("Similarly, in the instant case, PEBTF's right of subrogation did not arise until, at the earliest, the dates on which PEBTF paid the benefit amounts to Wimer."); *Hagans v. Const. State Serv. Co.*,

687 A.2d 1145, 1149–50 (Pa. Super. 1997) ("An insurer's right of subrogation is an equitable principle deeply rooted in the realm of insurance contracts.  *Subrogation presupposes an actual payment and satisfaction of a debt or claim* by the entity asking to be subrogated ('subrogee')." (citing *Daley–Sand v. West American Ins. Co.*, 564 A.2d 965 (Pa. Super. 1989)) (emphasis added)); *United Fin. Cas. Co. v. A.M. Skier Agency, Inc.*, No. 3:13-CV-1291, 2014 WL 868612, at *4 (M.D. Pa. Mar. 5, 2014) ("And whether in contract or equity, subrogation 'is to be regarded as based upon and governed by equitable principles.'  An insurer, . . . , *upon discharging an insured's liability*, can become equitably subrogated and may assert its insured's claims against third parties, including a primary insurer." (quoting *Greater New York Mut. Ins. Co. v. North River Ins. Co.*, 85 F.3d 1088, 1095 (3d Cir. 1996) (emphasis added)).  Plaintiffs acknowledge that no such payment has been made to date, but argue that, if they are unsuccessful in their attempts to void and/or rescind the CFIC Policies and the U.S. Fire Policy, they will eventually be required at some point in the future to pay some unknown amount of money in defending and indemnifying Sidelines.

Importantly, a finding in this case that the CFIC Policies and the U.S. Fire Policy should not be rescinded will not automatically result in such a payment.  While it may be a practical reality that Plaintiffs will make such a payment at some point in the future should their rescission efforts prove unsuccessful, Plaintiffs' equitable subrogation claim cannot arise until they actually make such a payment because it is actual payment, and not liability, that causes an equitable subrogation claim to arise.  *See Wimer v. Pennsylvania Emps. Benefit Tr. Fund*, 939 A.2d 843, 853 (Pa. 2007) (quoting the Supreme Court of Pennsylvania's decision in *Insurance Co. of North America v. Fidelity Title & Trust Co.*, 16 A. 791, 792 (Pa. 1889), wherein the *Fidelity Title* court held that "[i]t is not a liability to pay, but an actual payment to the creditor, which raises the equitable right to be subrogated to his remedies[,]" and ultimately rejecting a party's contention "that a right to

13

subrogation can accrue prior to actual payment by the subrogee in satisfaction of its obligation to the subrogor."); *see also Res. Properties XLIV, Inc. v. Philadelphia Auth. for Indus. Dev.*, 2000 WL 33711060, at *4 (Pa. Com. Pl. Nov. 7, 2000) ("Pennsylvania law also holds that until the creditor is fully paid, subrogation will not be permitted." (citing *Stofflett v. Kress*, 21 A.2d 31, 33 (Pa. 1941); *Hagans*, 687 A.2d at 1149)).  Accordingly, Plaintiffs' claim for equitable subrogation will not become ripe in this action simply on the basis that they are unsuccessful in rescinding the CFIC Policies and the U.S. Fire Policy.  In this way, Plaintiffs' equitable subrogation claim is not a true "if-then" pleading.  While Plaintiffs set forth an "if," i.e. if our claim seeking to rescind the CFIC Policies and the U.S. Fire Policy is unsuccessful, they fail to set forth a cognizable "then," i.e. then we will have, at that time, made a payment entitling us to equitable subrogation.

Plaintiffs cannot plead, much less prove, the essential elements of an equitable subrogation claim by way of this action until Plaintiffs pay a creditor in connection with the Accident.  Such a claim will remain premature in this action even if Plaintiffs are merely unsuccessful in their attempts to rescind the CFIC Policies and the U.S. Fire Policy by way of this action.  Plaintiffs' claims for rescission of the relevant policies and their claim for equitable subrogation are not asserted in a manner consistent with the hypothetical pleading permitted by Rule 8(d)(2).  Accordingly, the Court will dismiss the equitable subrogation claim without prejudice as premature.[3]

---

[3] As the Court finds that Plaintiffs' equitable subrogation claim is premature for the reasons set forth above, the Court declines to address Huntington's argument that such a claim would also be barred by the gist of the action doctrine. Because the Court finds that the equitable subrogation claim is premature, the Court also declines to address the merits of the claim at this time.  The Court does note, however, that a claim for equitable subrogation places the insurer in the shoes of its insured, and allows the insurer to assert the claims of its insured.  *See Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, No. CV 19-5377, 2021 WL 1224109, at *3 (E.D. Pa. Apr. 1, 2021) ("The insurer, as subrogee, however, can only recover when the subrogor, the insured, 'has a legally cognizable cause of action against a third party.'  [*Kiker v. Pennsylvania Fin. Resp. Assigned Claims Plan*, 742 A.2d 1082, 1086 (Pa. Super. 1999)].  The insurer's right to subrogation is 'exclusively derivative—it depends on the claim of the insured and is subject to whatever defenses the tortfeasor has against the insured.'  *Banks Tower Communications, Ltd. v. Home Ins. Co.*, 590 F. Supp. 1038, 1040 (E.D. Pa. 1984)[.]").  If the CFIC Policies and the U.S. Fire Policy are not

### B.  Fraud Claim (Count IV)

Huntington asserts that Plaintiffs' fraud claim is barred by the gist of the action doctrine because it is materially identical to Plaintiffs' breach of contract claim.  Br. in Supp. 10, ECF No. 40.  Huntington argues that any duty to disclose the Accident or notify Plaintiffs of claims or losses under the CFIC Policies and the U.S. Fire Policy was created by and arises out of the Producer Agreement, and further argues that the same is made clear in both the Producer Agreement and the Complaint.  *Id*.  Huntington argues that, accordingly, the allegation that Huntington failed to disclose the Accident or notify Plaintiffs of the same simply recasts Plaintiffs' breach of contract claim as a fraud claim.  *Id*.

Plaintiffs argue that their claim for fraud "go[es] far beyond Huntington merely failing to immediately notify Plaintiffs of the [Accident]," and that the claim is instead based upon "the purposeful, fraudulent behavior of Huntington in reinstating Sidelines' coverage in order to ensure Sidelines had coverage for a serious automobile accident that occurred after the policies had been properly cancelled."  Br. in Opp'n 6-7, ECF No. 40.   Plaintiffs further argue that Huntington's pursuit of reinstatement of the CFIC Policies and the U.S. Fire Policy was outside their duties under Producer Agreement.  *Id*.

With respect to the gist of the action doctrine, the Superior Court of Pennsylvania has explained:

> The gist of the action doctrine acts to foreclose tort claims: 1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

rescinded by way of this action, it is unclear to this Court at this juncture what claim Sidelines, i.e. the insured, could have against Huntington.  The Court anticipates that the parties will be prepared to address the same should Plaintiffs bring such a claim in the future.

*Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. 2007) (citing *Hart v. Arnold*, 884 A.2d

316, 340 (Pa. Super. 2005)). "As a practical matter, the doctrine precludes plaintiffs from re-

casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advert.,*

*Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002).  The Supreme Court of Pennsylvania has explained:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.  In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling.  If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. . . .  Although this duty-based demarcation was first recognized by our Court over a century and a half ago, it remains sound, as evidenced by the fact that it is currently employed by the high Courts of the majority of our sister jurisdictions to differentiate between tort and contract actions.  We, therefore, reaffirm its applicability as the touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint.
>
> Notably, and of relevance to the case at bar, our prior decisions in *Zell* and *Krum* underscore that the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract.  Indeed, our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party. . . .
>
> Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract.  Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68-69 (Pa. 2014) (footnotes omitted) (citations omitted).

In ultimately finding that the Brunos' negligence claim was not barred by the gist of the action doctrine, Supreme Court of Pennsylvania held:

> Accordingly, while Erie had contractual obligations under its policy to investigate whether mold was present, and also to pay for all property damage caused by mold, the substance of the Brunos' allegations is not that it failed to meet these obligations; rather, it is that Erie, during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the Brunos that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances. Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself.   The policy in this instance merely served as the vehicle which established the relationship between the Brunos and Erie, during the existence of which Erie allegedly committed a tort.

*Bruno*, 106 A.3d at 71.  The United States District Court for the Middle District of Pennsylvania has explained:

> A certain tension exists, at the motion to dismiss stage, between Pennsylvania's "gist of the action" doctrine and Rules 8(d)(2) and (3) of the Federal Rules of Civil Procedure, which expressly condone pleading in the alternative.  District courts in Pennsylvania have noted that caution should be exercised in determining the "gist of an action" at the motion to dismiss stage.

*Odgers v. Progressive N. Ins. Co.*, 112 F. Supp. 3d 286, 292 (M.D. Pa. 2015).

In light of the above, the natures of the duties alleged to have been breached in this action are essential in determining whether Plaintiffs' fraud claim is barred by the gist of the action doctrine.  While the Court agrees that Plaintiffs' allegations respecting Huntington's alleged failure to disclose the Accident and/or notify Plaintiffs of the Accident in the course of requesting reinstatement of the CFIC Policies and the U.S. Fire Policy implicate the Producer Agreement, they also quite clearly implicate the broader societal duty to not affirmatively mislead or advise without a factual basis.  *See Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 429 (Pa. Super. 2016); *see also Servis One, Inc. v. OKS Grp.*, LLC, No. CV 20-4661, 2021 WL

1115288, at *7 (E.D. Pa. Mar. 24, 2021) [("U]nder Pennsylvania law, 'the deliberate nondisclosure of a material fact is regarded as the legal equivalent of an intentional false affirmation.'" (quoting *Busy Bee, Inc. v. Corestates Bank N.A.*, 67 Pa. D. & C. 4th 496, 513 (Pa. Com. Pl. 2004))).  As such, the Court is not inclined to dismiss Plaintiffs' fraud claim pursuant to the gist of the action doctrine at this time.  Accordingly, the Court will deny Huntington's Motion to the extent that it requests dismissal of Plaintiffs' claim for fraud.  Such denial is without prejudice to Huntington raising the issue at a later stage of the litigation, if warranted and appropriate.

## IV.   Conclusion

For the reasons discussed above, the Court will grant in part and deny in part Huntington's Partial Motion to Dismiss consistent with the Court's discussion above.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: August 26, 2021

cc: All counsel of record